Slip Op. 21-29

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THYSSENKRUPP MATERIALS NA INC., THYSSENKRUPP MATERIALS NA INC. – COPPER & BRASS SALES DIVISION, THYSSENKRUPP MATERIALS NA INC. – MATERIALS TRADING DIVISION, THYSSENKRUPP MATERIALS NA INC. – KEN-MAC METALS DIVISION, THYSSENKRUPP PRESTA DANVILLE LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES, JOSEPH R. BIDEN, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, WYNN COGGINS, IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF COMMERCE, UNITED STATES DEPARTMENT OF COMMERCE, TROY MILLER, IN HIS OFFICIAL CAPACITY AS SENIOR OFFICIAL PERFORMING THE DUTIES OF THE COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION,**<br><br>Defendants. | **Before: Claire R. Kelly, Gary S. Katzmann, and Jane A. Restani, Judges**<br><br>**Court No. 20-00093** |

## OPINION

[Granting Defendants' motion to dismiss Plaintiffs' Complaint as it pertains to all claims therein.]

Dated: March 10, 2021

Lawrence M. Friedman, Barnes, Richardson & Colburn, LLP, of Chicago, IL, argued for Plaintiffs Thyssenkrupp Materials NA Inc., Thyssenkrupp Materials NA Inc. – Copper & Brass Sales Division, Thyssenkrupp Materials NA Inc. – Materials Trading Division, Thyssenkrupp Materials NA Inc. – Ken-Mac Metals Division and Thyssenkrupp Presta Danville LLC. With him on the brief were David G. Forgue, and Lois Elizabeth J. Wetzel.

Joshua E. Kurland, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington D.C., argued for Defendants United States, Joseph R. Biden, in his official capacity as President of the United States, Wynn Coggins, in her official capacity as Acting Secretary of Commerce, United States Department of Commerce, Troy Miller, in his official capacity as Senior Official Performing the Duties of the Commissioner, United States Customs and Border Protection. With him on the briefs were Jeffrey Bossert Clark, Acting Assistant Attorney General, Ethan P. Davis, Former Acting Assistant Attorney General, Jeanne E. Davidson, Director, Tara K. Hogan, Assistant Director and Ann C. Motto, Trial Attorney.

Restani, Judge: The question before us is whether the process created in Interim Final Rule: Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum, 83 Fed. Reg. 12,106 (Dep't Commerce Mar. 19, 2018) ("Interim Final Rule")[1] for importers to request exclusions from tariffs imposed on aluminum, Proclamation No. 9704 of March 8, 2018: Adjusting Imports of Aluminum into the United States, 83 Fed. Reg. 11,619 (Mar. 15, 2018) ("Proclamation 9704"), and steel, Proclamation No. 9705 of March 8, 2018: Adjusting Imports of Steel Into the United States, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ("Proclamation 9705"), under the Trade Expansion Act of 1962, Pub. L. No. 87-794, Title II, § 232, 76 Stat. 872 (1962) (codified as amended 19 U.S.C. § 1862) ("Section 232"), violates

---

[1] The Interim Final Rule has been amended since its enactment, but the exclusion process has remained substantively the same, with Commerce granting exclusions to "directly affected individuals or organizations located in the United States . . . . [who use steel or aluminum] in business activities" and retaining "the discretion to make exclusions available to all importers if [it] find[s] the circumstances so warrant[.]" Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,057, 46,032 (Dep't Commerce Sept. 11, 2018) ("Interim Final Rule II"); see also Interim Final Rule, 83 Fed. Reg. 12,111–12; see also Implementation of New Commerce Section 232 Exclusions Portal, 84 Fed. Reg. 26,751 (Dep't Commerce June 10, 2019); Section 232 Steel and Aluminum Tariff Exclusions Process, 85 Fed. Reg. 81,060 (Dep't Commerce Dec. 14, 2020) ("Interim Final Rule Dec. 2020"); Defs.' Notice of Revised Regulation, ECF No. 21 (Dec. 15, 2020).

the Uniformity Clause of the Constitution or is arbitrary, capricious or otherwise not in accordance with law.

Plaintiffs Thyssenkrupp Materials NA Inc., Thyssenkrupp Materials NA Inc. – Copper & Brass Sales Division, Thyssenkrupp Materials NA Inc. – Materials Trading Division, Thyssenkrupp Materials NA Inc. – Ken-Mac Metals Division, and Thyssenkrupp Presta Danville LLC, (collectively, "Thyssenkrupp") are importers of steel and aluminum. Thyssenkrupp argues that the exclusion process, which grants exclusions on an application basis to specific requestors and not automatically to all importers of a particular article, creates a non-uniform tax across the United States in violation of the Uniformity Clause of the Constitution, and is an impermissible construction of Proclamation 9704, Proclamation 9705, and Section 232. Defendants, the United States, Joseph R. Biden, in his official capacity as President of the United States, Wynn Coggins, in her official capacity as Acting Secretary of Commerce, the United States Department of Commerce, Troy Miller, in his official capacity as Senior Official Performing the Duties of the Commissioner, and the United States Customs and Border Protection, (collectively, "the Government"), move the court to dismiss the Complaint for failure to state a claim, under U.S. Court of International Trade ("USCIT") Rule 12(b)(6).[2]

## BACKGROUND

### A. Statutory Framework

Congress authorized the President under Section 232 to adjust imports that pose a threat to the national security of the United States. In furtherance of Section 232, President Trump imposed 10 percent ad valorem duties on imports into the United States of certain aluminum products, see Proclamation 9704, 83 Fed. Reg. at 11,620, and imposed 25 percent ad valorem duties on imports

---

[2] Pursuant to USCIT Rule 25(d), the names of public officials sued in their official capacity are automatically substituted when there is a change in administration.

into the United States of certain steel products, see Proclamation 9705, 83 Fed. Reg. at 11,626, (collectively, "Proclamations"). In the Proclamations, the President authorized Commerce to exclude aluminum and steel articles from the imposition of these tariffs if the article is "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality and [Commerce] is also authorized to provide such relief based upon specific national security considerations." Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum); Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3 (steel). The President explicitly instructed that such relief shall be provided for an aluminum or steel article "only after a request for exclusion is made by a directly affected party located in the United States." Id.

## B. Section 232 Exclusion Process for Steel and Aluminum

In March 2018, Commerce established a process for "[o]nly individuals or organizations using [steel or aluminum] . . . in business activities . . . in the United States [to] submit exclusion requests[.]" Interim Final Rule, 83 Fed. Reg. at 12,107. The rule establishes that "[a]n exclusion will only be granted if an article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for a specific national security consideration." Interim Final Rule, 83 Fed. Reg. at 12,110 (steel), 12,112 (aluminum). Commerce determined that it would approve exclusions "on a product basis" and limit exclusions "to the individual[s] or organization[s] that submitted the specific exclusion request, unless [it] approves a broader application of the . . . exclusion . . . to additional importers." Id. at 12,107.[3]

---

[3] The exclusion process also provides that "individuals or organizations" may submit an exclusion request for "a steel or aluminum product that has already been the subject of an approved exclusion[,]" without reference to the previously approved, denied or invalid exclusion request. Id. at 12,107, 12,110 (steel), 12,112 (aluminum). Commerce established that it may consider a previous exclusion request when reviewing a subsequent request. Id.

### C. Challenges to Commerce's Actions

Thyssenkrupp describes its Complaint as a facial challenge of Commerce's regulations implementing the <u>Proclamations</u>. <u>See</u> Pls.' Letter of Clarification, ECF No. 23 (Jan. 6, 2021). Thyssenkrupp has made no allegation in its Complaint that it requested an exclusion and that Commerce improperly denied it. The Complaint does not challenge how the regulation was applied to a specific exclusion request from Thyssenkrupp, but rather that the regulations require Thyssenkrupp to apply for an exclusion in the first place. This court regularly hears cases regarding specific exclusion denials. <u>See, e.g.</u>, <u>JSW Steel (USA) Inc. v. United States</u>, 44 CIT __, 466 F. Supp. 3d. 1320 (2020). Should Thyssenkrupp request such an exclusion and be denied, it may seek this remedy.

Thyssenkrupp raises two challenges to Commerce's actions.[4] First, in Counts I and III, Thyssenkrupp asserts that Commerce's exclusion process for Section 232 duties on aluminum and steel articles results in a dis-uniform tax whereby individual importers pay different duty rates on the same merchandise, in violation of the Uniformity Clause of the Constitution. Compl. ¶¶ 38, 42; <u>see also</u> 5 U.S.C. § 706(2)(B). In support of this claim, Thyssenkrupp alleges that it paid Section 232 duties on merchandise that falls within the same Harmonized Tariff Schedule of the

---

[4] Thyssenkrupp also alleged in the Complaint that "Section 232 is an unconstitutional delegation of authority from Congress to the Executive Branch" because it lacks "an intelligible principle by which the Executive is to act, [thus] violating the delegation doctrine." Compl. ¶ 44, ECF No. 2 (Apr. 21, 2020). The Supreme Court previously decided this issue in <u>Fed. Energy Admin. v. Algonquin SNG, Inc.</u>, holding that "the standards that [Section 232] provides the President in its implementation are clearly sufficient to meet any delegation doctrine attack." 426 U.S. 548, 559 (1976); <u>see also</u> <u>Am. Inst. for Int'l Steel, Inc. v. United States</u>, 806 Fed. App'x 982, 989 (Fed. Cir. 2020) ("The Court's rejection of the nondelegation-doctrine challenge to section 232 was a necessary step in the Court's rationale for ultimately construing the statute as it did, and the constitutional ruling is therefore binding precedent."), <u>cert. denied</u>, 141 S. Ct. 133 (2020). Recognizing this, Thyssenkrupp chose not to pursue this challenge. <u>See</u> Pls.' Resp. to Defs.' Mot. to Dismiss at 7, ECF No. 12 (Aug. 25, 2020) ("Pls.' Resp."). Accordingly, Count IV of the Complaint is dismissed.

United States ("HTSUS") classification as merchandise imported by other importers that received an exclusion. Compl. ¶¶ 21–22. Thyssenkrupp further alleges that the exclusion process results in geographic discrimination because Commerce grants exclusions to importers that import goods through one state, thereby discriminating against importers that import the same goods through other states. See Pls.' Resp. at 17–20. As a result, Thyssenkrupp avers that the exclusion process violates the Uniformity Clause and is "unlawful" under 5 U.S.C. § 706(2)(B). The Government counters that because both the Section 232 tariffs imposed by the President and Commerce's regulations implementing these tariffs are defined in non-geographical terms and operate with the same force and effect nationwide, the exclusion process set out in the Interim Final Rule does not violate the Uniformity Clause. Defs.' Mot. to Dismiss at 16 –17, ECF No. 11 (Jul. 22, 2020) ("Gov. Mot. to Dismiss").

In Count II, Thyssenkrupp challenges Commerce's Interim Final Rule, which establishes a process for granting Section 232 duty exclusions to specific importers rather than to specific articles, as contrary to the Proclamations and as arbitrary, capricious, an abuse of discretion or not in accordance with law, under the Administrative Procedure Act ("APA"). Compl. ¶¶ 24, 40; see 5 U.S.C. § 706(2)(A). Thyssenkrupp argues that Commerce's "decision to grant exclusions to individual requestors rather than for products based on HT{SUS} classification is contrary to" the Proclamations. Id. Thyssenkrupp puts particular emphasis on the language in the Proclamations directing Commerce to provide such relief "for any aluminum article," Proclamation 9704, 83 Fed. Reg. 11,621, cl. 3 (emphasis added), or "for any steel article" Proclamation 9705, 83 Fed. Reg. 11,627, cl. 3 (emphasis added), rather than for individual importers. Pls.' Resp. at 21–23. The Government counters that this claim should be dismissed because the Interim Final Rule is consistent with the Proclamations and the President expressly authorized Commerce to provide such relief only after an affected party requests it. Gov. Mot. to Dismiss at 27–38. The Government

further asserts that Commerce's interpretation of the <u>Proclamations</u> in creating the exclusion process is entitled to deference because the <u>Interim Final Rule</u> is consistent with the text of the <u>Proclamations,</u> the overall purpose of Section 232 tariffs, and the Congressional delegation of authority in Section 232 to the President in enacting Section 232, as further delegated to Commerce with respect to the exclusion process. <u>Id.</u>

Thyssenkrupp requests two forms of relief: a refund for all the duties paid, including interest, on the importation of goods imported under HTSUS classifications for which other parties have been granted exclusions, and an injunction preventing Customs and Border Protection from collecting duties under Section 232 on products for which any requestor has received an exclusion. Compl. at 13–14. The Government argues that even if Thyssenkrupp's claims were viable, the injunctive relief that Thyssenkrupp seeks is not appropriate because it can be made whole by receiving a refund of duties paid. Gov. Mot. to Dismiss at 44.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1581(i)(2), (4) (2018). Thyssenkrupp's claims are against the United States, its agencies, or its officers and arise out of and relate to the "administration and enforcement" of a law of the United States providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue[.]" <u>Id.</u>

The jurisdiction of the federal courts is also constrained to those cases which involve actual "cases or controversies." <u>See</u> U.S. Const. art. III, § 2, cl. 1; <u>see also</u> <u>Royal Thai Gov't v. United States</u>, 38 CIT __, __, 978 F. Supp. 2d 1330, 1332–33 (2014). Pursuant to Article III, a plaintiff must establish constitutional standing, by demonstrating "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016) (citing

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (citing Lujan, 504 U.S. at 560). A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549.

The Government contends that Thyssenkrupp is not injured because it has made no claim for an exclusion that has been denied, see Gov. Mot. to Dismiss at 26, or that it has imported merchandise identical to the merchandise imported by others that has been excluded from Section 232 duties. See id. at 26–27; Defs.' Reply in Supp. of Their Mot. to Dismiss at 15–16, ECF No. 18 (Oct. 15, 2020) ("Gov. Reply"). Even though the Government has challenged jurisdiction on this basis only in passing, see Gov. Reply at 16, the court must assure itself that there is constitutionally minimal standing.

While Thyssenkrupp's Complaint is not completely clear, the facts it alleges imply that it is injured in fact by the requirement of participation in an administrative exclusion process with no certainty of success where its competitor has received such an exclusion. Compl. ¶¶ 23, 25. Thyssenkrupp alleges more than just "a bare procedural violation" in its Complaint. Spokeo, 136 S. Ct. at 1549. Thyssenkrupp alleges that it is "at a competitive disadvantage as compared to importers and other organizations who have received an exclusion" because these importers can now charge lower prices for the excluded goods than Thyssenkrupp since they do not have to pay Section 232 duties on these products. Compl. ¶ 25. The court concludes that such economic injury is sufficiently concrete and nonspeculative to satisfy the minimal burden set forth by Lujan and Spokeo. See Lujan, 504 U.S. at 560; Spokeo, 136 S. Ct. at 1548; see also Invenergy Renewables LLC v. United States, 43 CIT __, __, 422 F. Supp. 3d 1255, 1271–74 (2019). This economic injury is also fairly traceable to the actions challenged by Thyssenkrupp, i.e. Commerce's actions in

implementing the exclusion process and granting exclusions to specific importers and not to articles. Finally, this injury is redressable should the court come to a favorable decision for Thyssenkrupp, either through a refund of duties paid, or through the injunctive relief sought by Thyssenkrupp, requiring Commerce to grant exclusions on a product by product basis.[5]

## DISCUSSION

The Government asserts that the Complaint fails the basic test of plausibility. Gov. Mot. to Dismiss at 14; Gov. Reply at 15–17.[6] The essence of the present motion is not based on factual insufficiency, however, but on the lack of a cognizable legal claim.[7] Thus, we turn to the constitutional provision at issue and the challenged regulations.

---

[5] Prudential or statutory standing, while not thought of as a jurisdictional issue, see Gilda Industries, Inc. v. United States, 446 F.3d 1271, 1280 (Fed. Cir. 2006) (citation omitted), and not explicitly raised by the parties, is not at issue in this case. The test is whether "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Ass'n. of Data Processing Serv. Org. Inc. v. Camp, 397 U.S. 150, 153 (1970); see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 126 (2014). In this case, as an importer of steel and aluminum merchandise, Compl. ¶¶ 20–22, Thyssenkrupp is within the zone of interest of the relevant statute, Proclamations, and Constitutional provision.

[6] In deciding a motion to dismiss, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009). In order to survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). A complaint must "state a claim to relief that is plausible on its face[,]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570), but "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility[.]" Id. at 678 (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted).

[7] Given the disposition of the action there is no reason to delve into whether Thyssenkrupp should be permitted to amend the Complaint to assert facts with more particularity. Such action would be futile. Further, Thyssenkrupp's assertion that the court needs to await an administrative record, see Pls.' Resp. at 11, 24, is not well-taken given the disposition of the legal grounds that does not require review of particular agency actions.

### A. The Interim Final Rule does not violate the Uniformity Clause

The Uniformity Clause requires that "all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art I. § 8, cl. 1. The purpose of this clause is to prevent the federal government from discriminating between states when levying taxes and duties. See Knowlton v. Moore, 178 U.S. 41, 89 (1900). In the Head Money Cases, the Supreme Court wrote that a "tax is uniform when it operates with the same force and effect in every place where the subject of it is found." Edye v. Robertson, 112 U.S. 580, 594 (1884) ("Head Money Cases"). In Knowlton, after an extensive analysis of the clause's legislative history, the Court determined that the Uniformity Clause "simply requires that whatever plan or method Congress adopts for laying the tax in question, [it is the] same plan and the same method . . . made operative throughout the United States[.]" 178 U.S. at 84. The Court in United States v. Ptasynski, 462 U.S. 74, 84 (1983), created a simple test for reviewing a law under the Uniformity Clause.

Under Ptasynski, "[w]here Congress defines the subject of a tax in nongeographic terms, the Uniformity Clause is satisfied." 462 U.S. at 84. Only if Congress has defined the subject of a tax in geographic terms does the court conduct a close review to determine whether there is "actual geographic discrimination" on the part of Congress. Id. at 85. Even this close review is deferential. See id. at 85–86 (upholding tax exemption for Alaskan oil because no evidence "that Congress intended to grant Alaska an undue preference at the expense of other oil-producing States"); Thomson Multimedia Inc. v. U.S., 26 CIT 958, 961–65, 219 F. Supp. 2d 1322, 1325–30 (2002) (upholding the Harbor Maintenance Tax that provided exemptions for certain ports because plaintiff "failed to show the actual geographic discrimination or favoritism prohibited by the Uniformity Clause"), aff'd on other grounds, 340 F.3d 1355 (Fed. Cir. 2003); Amoco Oil Co. v. United States, 23 CIT 613, 619–20, 63 F. Supp. 2d 1332, 1339–41 (1999) (holding the same), aff'd on other grounds, 234 F.3d 1374 (Fed. Cir. 2000). As the court has previously noted, "[t]he

Supreme Court has never relied upon the Uniformity Clause to invalidate a statute." <u>Thomson</u>, 26 CIT at 961.

Thyssenkrupp contends that the exclusion process created by Commerce violates the Uniformity Clause. In particular, Thyssenkrupp argues that by failing to grant exclusions from Section 232 duties "to all importers of the same merchandise," the duties "do not have the same force and effect in every place where the subject of the tariff is found" thereby violating "the Uniformity Clause." Compl. ¶¶ 15, 38, 42. Thyssenkrupp essentially alleges that it finds itself in the following situation: Thyssenkrupp imports a steel or aluminum product, Product A. Another importer, Company X, which also produces Product A, applies for an exclusion from the Section 232 duties and Commerce grants it. Only Company X's product is excluded from the tariff. For Thyssenkrupp to receive an exclusion from the Section 232 duty for the same merchandise, Product A, they would have to apply for the exclusion separately. Thyssenkrupp and Company X operate in different states. Therefore, Thyssenkrupp argues that Commerce's exclusion process creates a geographically dis-uniform duty on the same subject, violating the Uniformity Clause. <u>See</u> <u>id.</u> ¶¶ 11–15; Pls.' Resp. 17–20.[8]

---

[8] At its core, Thyssenkrupp's argument can be best characterized as a slight variation of the intrinsic uniformity theory, which says that the Uniformity Clause requires equality in taxation across states, individuals and property. <u>See</u> <u>Knowlton</u>, 178 U.S. at 84, 104–106. While the <u>Head Money Cases</u> seemed to open the door to the intrinsic theory, <u>see</u> 112 U.S at 594, that door was firmly shut by subsequent cases. In <u>Knowlton</u>, the Supreme Court determined that "the words 'uniform throughout the United States' do not signify an intrinsic but simply a geographical uniformity." 178 U.S. at 106. Later cases upheld this interpretation. <u>Fernandez v. Wiener</u>, 326 U.S. 340, 359 (1945) (citing <u>Knowlton</u>, 178 U.S. at 83–109) (noting that "the uniformity in excise taxes exacted by the Constitution is geographical uniformity, not uniformity of intrinsic equality and operation."). The <u>Ptasynski</u> test operationalizes this narrow understanding of the Clause. <u>See</u> 462 U.S at 84. Thyssenkrupp's allegation that Commerce's granting of an exclusion to a company that imports goods solely through Maryland is evidence of geographic discrimination, <u>see</u> Pls.' Resp. at 17–18, but failure to allege that Commerce is explicitly doing so based on geography, relies on the rejected intrinsic theory of the Uniformity Clause.

In the Complaint, Thyssenkrupp appears to claim that all articles in an eight-digit HTSUS category are to be excluded if any article in such a category is excluded. See Compl. ¶¶ 21–23, 25, Table A, Table B.[9] Thyssenkrupp disavows this construction of the Complaint, see Pls.' Resp. at 7–8, but has not specified the exact basis for defining the class of allegedly discriminated against product. However the exact discrimination is defined, applying the Ptasynski test, Thyssenkrupp has failed to state a claim that the exclusion process is unconstitutional under the Uniformity Clause. 5 U.S.C. § 706(2)(B).

The Proclamations are defined in non-geographic terms, allowing any "directly affected party located in the United States" to apply for an exclusion from the Section 232 duty, and granting exclusions for products "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality" or also "based upon specific national security considerations." Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum); Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3 (steel). The implementation regulations further elaborate on these non-geographic terms defining directly affected parties that may apply for an exclusion as only "individuals or organizations using steel [and aluminum] articles . . . in business activities . . . in the United States," Interim Final Rule, 83 Fed. Reg. at 12,107, and using the same non-geographic criteria outlined in the Proclamations to grant exclusions, compare id. at 12,110 (steel), 12,112 (aluminum) ("[a]n exclusion will only be granted if an article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for a specific national security consideration."), with Proclamation

---

[9] The court notes the breadth of various HTSUS provisions. For example, one of the HTSUS classifications at issue here, 7219.35.00, see Compl. ¶ 21, Table B, covers: Flat-rolled products of stainless steel, of a width of 600 mm or more, not further worked than cold-rolled (cold-reduced), of a thickness of less than 0.5 mm; another, 7606.12.30, see Compl. ¶ 21, Table A, covers: Aluminum plates, sheets and strip, of a thickness exceeding 0.2 mm, rectangular (including square), of aluminum alloys, not clad. See HTSUS subheading 7219.35.00, 7606.12.30 (2021).

9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum) and Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3 (steel). While it is true that importers applying for an exclusion must provide some geographic information, including addresses for the requesting organization and the importer of record, as well as the port of entry through which the merchandise will be transported, see Pls.' Resp. at Exhibit 1, the subject of the tax and the exclusion are both defined in nongeographic terms. Thus, "the Uniformity Clause is satisfied." Ptasynski, 462 U.S. at 84. This alone is dispositive.

Even if Thyssenkrupp could overcome this hurdle, the Complaint reveals that Thyssenkrupp has failed to plead facts that show "actual geographic discrimination" or "any indication that Congress sought to benefit [one state over another] for reasons that would offend the purpose of the Clause." Ptasynski, 462 U.S. at 84–86. Thyssenkrupp does not, for example, allege that Commerce is making exclusion decisions based upon the geographic information that they receive from requestors. Instead, Thyssenkrupp argues that because Commerce is granting exclusions on an importer-by-importer basis rather than a product-by-product basis, Commerce's exclusion process necessarily results in dis-uniform taxes across states for the same subject. This argument fails, however, because Thyssenkrupp, like any other directly affected party in the United States, could still apply for the exclusion. Thyssenkrupp also does not allege that it was, or will be, denied an exclusion, based upon its geographic location within the United States.

As a result, Thyssenkrupp has made no specific allegation of harm from geographic discrimination based on Commerce's implementation of the exclusion process. The exclusion process "operates with the same force and effect in every place where the subject of it is found," Head Money Cases, 112 U.S. at 594. Accordingly, Counts I and III of the Complaint are dismissed. See Compl. ¶¶ 37–38, 41–42.

**B.  The Interim Final Rule is consistent with the Presidential Proclamations**

The remaining question is whether the Interim Final Rule impermissibly exceeds the bounds of Section 232 and Proclamation 9704 and Proclamation 9705. Thyssenkrupp suggests that Proclamations 9710 and 9711,[10] which amend Proclamations 9704 and 9705 respectively, adding detail to the exclusion process essentially reflecting Commerce's approach, should be disregarded as impermissible modifications because the Amended Proclamations were issued beyond the period permitted for Presidential action under Section 232. Pls.' Resp. at 20–22; see Transpacific Steel LLC v. United States, 44 CIT __, __, 466 F. Supp. 3d 1246, 1252–53 (2020). Because the Interim Final Rule is a permissible interpretation of the Proclamations, and the Amended Proclamations do not alter the process in a material way, the court need not address whether the Amended Proclamations were untimely.

---

[10] Proclamation No. 9710 of March 22, 2018 Adjusting Imports of Aluminum Into the United States, 83 Fed. Reg. 13,355, 13,358, cl. 6–7 (Mar. 28, 2018) ("Proclamation 9710") and Proclamation No. 9711 of March 22, 2018 Adjusting Imports of Steel Into the United States, 83 Fed. Reg. 13,361, 13,364, cl. 6–7 (Mar. 28, 2018) ("Proclamation 9711"), collectively, "Amended Proclamations", amended clause three of Proclamation 9704 and Proclamation 9705 respectively as follows:

> (6) Clause 3 of Proclamation [9704 and 9705] is amended by inserting a new third sentence reading as follows: "Such relief may be provided to directly affected parties on a party-by-party basis taking into account the regional availability of particular articles, the ability to transport articles within the United States, and any other factors as the Secretary deems appropriate.".

> (7) Clause 3 of Proclamation [9704 and 9705], as amended by clause 6 of this proclamation, is further amended by inserting a new fifth sentence as follows: "For merchandise entered on or after the date the directly affected party submitted a request for exclusion, such relief shall be retroactive to the date the request for exclusion was posted for public comment.".

Proclamation 9710, 83 Fed. Reg. at 13,358 (emphasis added); Proclamation 9711, 83 Fed. Reg. at 13,364 (emphasis added).

On March 19, 2018, Commerce issued the Interim Final Rule, which established "the process for how parties in the United States may submit requests for exclusions from actions taken by the President ("exclusion requests") to protect national security from threats resulting from imports of specified articles." 83 Fed. Reg. at 12,106; see also Compl. ¶ 10. Following notice and comment, Commerce issued revisions. See supra note 1; Interim Final Rule II, 83 Fed. Reg. at 46,026. Thyssenkrupp contends that the exclusion process established by Commerce in the Interim Final Rule is arbitrary, capricious, contrary to Presidential instruction and not in accordance with law because the process fails to provide automatic product-based exclusions once an exclusion has been granted to an importer for a particular product category. See 5 U.S.C. § 706(2)(A); Pls.' Resp. at 1–2, 20–23; Compl. ¶¶ 8–11, 24, 40.

The parties dispute what limits the Proclamations impose on Commerce with respect to the exclusion process. Specifically, the court must decide if Commerce's interpretation of clauses three and four of the Proclamations authorizing Commerce "to provide relief from the additional duties set forth in clause 2 of this proclamation for any [aluminum or steel] article," is permissible. Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum) (emphasis added); Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3 (steel) (emphasis added). Thyssenkrupp argues that the use of the term "article" throughout the Proclamations requires Commerce to grant exclusions to articles and not to specific importers that have made exclusion requests. See Compl. ¶ 11; Pls.' Resp. at 20–23. Thyssenkrupp contends that the Proclamations require Commerce to automatically grant exclusions to all importers of equivalent articles, without requiring those importers to submit a request. See id.

The Government counters that the term "article" in the Proclamations must be read in context and notes that the Proclamations specifically require that "[s]uch relief shall be provided for a[n] [aluminum or steel] article only after a request for exclusion is made by a directly affected

party located in the United States." Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum);

Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3 (steel); see Gov. Mot. to Dismiss at 28, 35–38.

The Government argues that Commerce's decision to grant exclusions based on an analysis of

specific products only after a request for an exclusion is made by an importer is a permissible

implementation of the exclusion process, and is consistent with the purpose and plain meaning of

the Proclamations. See Gov. Mot. to Dismiss at 38–43.

The threshold issue is whether Commerce's interpretation is entitled to any deference.

Because the parties dispute the meaning of the language of the Proclamations, Chevron, U.S.A.,

Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984), provides a useful analytical framework

even though at issue are words of Presidential proclamations rather than statutes. Under Chevron,

deference to an agency interpretation is required "when it appears that Congress delegated

authority to the agency generally to make rules carrying the force of law, and that the agency

interpretation claiming deference was promulgated in the exercise of that authority." United States

v. Mead Corp., 533 U.S. 218, 226–27 (2001); see also Chevron, 467 U.S. at 842–43. "Delegation

of such authority may be shown in a variety of ways, as by an agency's power to engage in

adjudication or notice-and-comment rulemaking, or by some other indication of a comparable

congressional intent." Mead Corp., 533 U.S. at 227. Deference extends to an agency's

interpretation of Presidential action through promulgated regulations. See Udall v. Tallman, 380

U.S. 1, 16–17, 23 (1965) (showing "great deference" to the Secretary of Interior's reasonable

interpretation of Presidential orders); Wagner v. Office of Pers. Mgmt., 783 F.2d 1042, 1045 (Fed.

Cir. 1986) (upholding OPM's interpretation of a Presidential directive as reasonable and entitled

to "great deference") (citation omitted); Yanko v. United States, 869 F. 3d 1328, 1334–35 (Fed.

Cir. 2017) (citing Udall and Wagner in holding that OPM's interpretation of a statute and a

Presidential directive was entitled to "broad deference"). The Interim Final Rule, promulgated in

the exercise of the authority granted by the Proclamations, went through such notice and comment rulemaking. See, e.g., Interim Final Rule II, 83 Fed. Reg. 46,026. Accordingly, the Interim Final Rule carries the requisite force of law that may qualify it for the type of deference given in Chevron and Udall. See Mead Corp., 533 U.S. at 226–27.

As with a Chevron analysis, if the Proclamations had plainly spelled out the exclusion process the inquiry would end. 467 U.S. at 842–43. If, however, the statute is silent and the implementing Presidential directive is ambiguous, as in a Chevron situation, the court will uphold Commerce's interpretation so long as the interpretation is reasonable. See id. at 843; DuPont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005).

Thyssenkrupp's assertion that the plain meaning of "[aluminum or steel] article" in the Proclamations commands an automatic product-based exclusion for all importers ignores the surrounding text of the Proclamations. See Compl. ¶¶ 8–9, 11; Pls.' Resp. at 21–23. The Proclamations further state that "relief shall be provided for a[n] [aluminum or steel] article only after a request for exclusion is made by a directly affected party" and that Commerce shall issue such procedures for requesting relief. Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3–4 (aluminum) (emphasis added); Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3–4 (steel) (emphasis added). Whether Commerce may provide an exclusion to only the requestor, or a broader exclusion to all importers of a particular article, is left open. Id.; see also Interim Final Rule II, 83 Fed. Reg. at 46,040.

Because Section 232 is silent as to limits on any exclusion process, and the Proclamations issued under the statute are ambiguous as to the particular procedures required for granting exclusions of Section 232 duties, the court must determine whether Commerce's Interim Final Rule establishing the exclusion process for aluminum and steel products is based on a permissible construction of the Proclamations and Section 232. The inquiry is narrow and determines only

whether Commerce's promulgation of the exclusions process under the authority of the Proclamations, set out in the Interim Final Rule, is "arbitrary and capricious or otherwise legally erroneous." Wagner, 783 F.2d at 1045; see also 5 U.S.C. § 706(2)(A). An agency is entitled to great deference when interpreting executive action through the promulgation of regulations, particularly when an administrative process is at issue and the agency in question was charged with implementing that process. Udall, 380 U.S. at 16–17. Where a statutory or executive action leaves ambiguity in its authorization to the agency, it serves as an implicit delegation for an agency to fill in the statutory gaps. See Food and Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 159 (2000) (Chevron deference is "premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps.") (internal citation omitted). The agency has broad discretion to fill in these gaps. Id.; see also Udall, 380 U.S. at 16–17.

Here, the Proclamations, pursuant to Congressional delegation, direct and provide Commerce with discretion to fill in the statutory gap regarding the details of an exclusion process for Section 232 duties. Section 232 provides that the President may "take action to adjust imports of an article and its derivatives" for the purposes of national security. 19 U.S.C. § 1862(c)(1)(B) (emphasis added). The statute is silent as to what is meant by article and provides a non-exhaustive list of considerations the Secretary of Commerce and the President shall consider in examining national security. Id. at § 1862(d).[11] The Proclamations direct Commerce to establish "procedures for the requests for exclusion" of the imposed Section 232 tariffs. Proclamation 9704, 83 Fed. Reg.

---

[11] These considerations include "domestic production needed for projected national defense requirements, the capacity of domestic industries to meet such requirements, existing and anticipated availabilities of the human resources, products, raw materials, and other supplies and services essential to the national defense, . . ." among others. Id. at § 1862(d).

at 11,621, cl. 3–4 (aluminum); Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3–4 (steel). Clause

three of the Proclamations states:

> (3) The Secretary . . . is hereby authorized to provide relief from the additional
> duties set forth in clause 2 of this proclamation for any [aluminum or steel] article
> determined not to be produced in the United States in a sufficient and reasonably
> available amount or of a satisfactory quality and is also authorized to provide such
> relief based upon specific national security considerations. Such relief shall be
> provided for a[n] [aluminum or steel] article only after a request for exclusion is
> made by a directly affected party located in the United States. If the Secretary
> determines that a particular [aluminum or steel] article should be excluded, the
> Secretary shall, upon publishing a notice of such determination in the Federal
> Register, notify Customs and Border Protection (CBP) of the Department of
> Homeland Security concerning such article so that it will be excluded from the
> duties described in clause 2 of this proclamation. The Secretary shall consult with
> CBP to determine whether the HTSUS provisions created by the Annex to this
> proclamation should be modified in order to ensure the proper administration of
> such exclusion, and, if so, shall make such modification to the HTSUS through a
> notice in the *Federal Register*.

Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum) (emphasis added); Proclamation

9705, 83 Fed. Reg. at 11,627, cl. 3 (steel) (emphasis added). It is clear that the Proclamations

require an individualized exclusion request procedure, but clauses three and four leave open the

exact process required. Id. Contrary to Thyssenkrupp's argument, the text of the Proclamations

does not require that Commerce extend a product-based exclusion automatically to all importers

of a particular product when it has granted an exclusion to any importer of that product. See Pls.'

Resp. at 21–23. The Proclamations neither require nor prohibit the extension of exclusions to

parties other than the requestor.[12] The Proclamations leave a gap for Commerce to fill in the details,

---

[12] In fact, when it has deemed it appropriate to do so, Commerce has made the exclusion on a more
general basis. In December of 2020, Commerce granted General Approved Exclusions ("GAEs")
to 15 aluminum articles, and 108 steel articles. See Interim Final Rule Dec. 2020, 85 Fed. Reg. at
81,071, 81,079–84. The products covered by the GAEs are described at the 10-digit HTSUS
category level or are more narrowly defined at the product level. See id. at 81,079–84.
Thyssenkrupp has not pointed to any language in the Proclamations imposing limitations on
Commerce's discretion to determine the details of this process.

and Commerce has broad discretion to do so. See Food and Drug Admin., 529 U.S. at 158; Udall, 380 U.S. at 16–17.

Under the authorization of these Proclamations, Commerce implemented the exclusion process in the Interim Final Rule. These procedures for granting exclusions are not only consistent with the text of the Proclamations, but are based on the exact criteria laid out in the Proclamations. Compare Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum); Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3 (steel), with Interim Final Rule, 83 Fed. Reg. at 12,110 (steel), 12,112 (aluminum) ("[a]n exclusion will only be granted if an article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for a specific national security consideration."). Commerce's decision to limit exclusions to individual requestors unless, in its discretion, it approves a broader application is a reasonable construction of the Proclamations' text as well as Section 232. Compare Interim Final Rule at 12,107, 12,110 (steel), 12,112 (aluminum), with Proclamation 9704, 83 Fed. Reg. at 11,621, cl. 3 (aluminum); Proclamation 9705, 83 Fed. Reg. at 11,627, cl. 3 (steel) ("Such relief shall be provided for a[n] [aluminum or steel] article only after a request for exclusion is made by a directly affected party located in the United States."); see also Interim Final Rule II, 83 Fed. Reg. at 46,040 (Commerce stating its reasoning for applying individual exclusions initially to ensure any "broad based product exclusions [are] done in a measured and deliberative way so as not to undermine the Proclamations and their objective of protecting critical U.S. national security interests."). It is rational for Commerce to place the burden on those desiring an exclusion to define the product at issue, so that the exclusion can be assessed in relation to the statutory factors reflected in the Proclamations. A requestor would not necessarily know what the breadth of a purely product-based exclusion should be. That is something about which Commerce may be able to draw some conclusions after experience with various requests. Placing the burden on parties to

explain what exclusions it desires for its own products, and why, is not unreasonable. Furthermore, it certainly reflects Commerce's view of its own needs as to the efficient administration of the exclusion process.

Commerce has broad discretion in implementing such procedure. Where an agency action is reasonable, and not "plainly erroneous or inconsistent" with Congressionally delegated authority through Presidential action or statute, we owe the agency "great deference." Wagner, 783 F.2d at 1045; see also Chevron, 467 U.S. at 843; Udall, 380 U.S. at 16–17. There is no indication that Congress in Section 232 or the President in the Proclamations required broader product-based exclusions or that not doing so would be inconsistent with the purpose of Section 232 duties in advancing national security. See 19 U.S.C. § 1862; Proclamation 9704; Proclamation 9705. In these circumstances, the court may not substitute its judgment for that of the agency. Udall, 380 U.S. at 16. Accordingly, we conclude that Commerce's interpretation of the Proclamations in the Interim Final Rule is lawful and dismiss Count II of the Complaint. Compl. ¶ 40; see 5 U.S.C. § 706(2)(A).

## CONCLUSION

Because the exclusion process promulgated by Commerce does not violate the Uniformity Clause of the Constitution and does not reflect an improper construction of the President's Proclamations, the Government's motion to dismiss is granted.

/s/ Jane A. Restani
Jane A. Restani, Judge

/s/ Claire R. Kelly
Claire R. Kelly, Judge

/s/ Gary S. Katzmann
Gary S. Katzmann, Judge

Dated: March 10, 2021
New York, New York